2003 WY 63

**Mike HUFF, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–157.

Supreme Court of Wyoming.

May 22, 2003.

Theodore E. Lauer, Director, Prosecution Assistance Program; and Kerry Gaines, Student Intern.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1]  This is an appeal from the order of the district court revoking and then reinstating, with modified conditions, the probation of appellant Mike Huff. We affirm.

### ISSUE

Huff sets forth the issue on appeal as:

Whether the district court abused its discretion when it revoked Mr. Huff's probation for violating a condition of probation when Mr. Huff could not physically comply with the condition because of his paralysis?

### FACTS

On November 16, 2001, Rush Locke, a probation and parole agent in Johnson County, sent Huff a letter requesting that Huff, as an individual on probation, come in for an office visit.  Huff complied, appearing in Locke's office on November 26, 2001, at 10:00 a.m. During this visit, Locke requested that Huff submit to a urine analysis.  Huff informed Locke that he was unable to comply because he was unable to urinate on demand due to his physical condition, paralysis.  Specifically, Huff stated that "he goes without urinating anywhere from three days to two weeks."  Locke then requested, as specified under Wyoming Department of Corrections policy, that Huff return to the office in two hours to produce the sample and indicated that if Huff had difficulty in urinating he should provide a note from his doctor.  Huff told Locke that he had not seen a doctor for thirty years and expressed his unhappiness with being asked to return, saying that it cost him $8.00 for gas and oil to make the visit and that he was going to bill the State for that sum.

[¶4]  At 11:55 a.m. that same day, Huff telephoned Locke to inform him that he would not be able to produce a sample at

Representing Appellant: Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee:  Hoke MacMillan, Attorney General;  Paul S. Rehurek, Deputy Attorney General;  D. Michael Pauling, Senior Assistant Attorney General;  Georgia L. Tibbetts, Senior Assistant Attorney General;

12:30 p.m. He also told Locke that he should "proceed with the court papers and stated he would request a trial and bring in a doctor's testimony." Accordingly, Locke requested that Huff come in the next morning at 9:00 a.m. to produce a urine sample.

Huff did return the following day at 9:00 a.m. Nevertheless, he advised Locke that he had just previously urinated at Hardee's Restaurant before the visit. Huff indicated that he therefore could not then give a sample and requested that Locke provide him with a sample bottle to take with him so he could provide a sample within the next few weeks. Locke advised Huff that the Department of Corrections did not allow for this manner of urinary collection because proper monitoring procedures could not be followed. Further, Locke told Huff that Department of Corrections policy stated that failure to submit to a chemical analysis of one's person within two hours of the request is considered a refusal.

[¶ 6] A petition for probation revocation was then filed by the State. At the probation revocation hearing, Locke testified that he was not aware of alternative testing procedures other than urinalysis for drug use screening and that blood tests were not administered to persons on probation. Huff testified that he did not submit to urinalysis because he was paralyzed on his left side due to a stroke he suffered at age fourteen and could not, therefore, urinate on demand. Huff also testified that he had seen Dr. Holst, a urologist, who confirmed that he had a voiding dysfunction. Huff further testified that he would submit to a blood test, if asked, and had done so in the past. A memorandum was further submitted from Dr. Holst that stated that Huff had a voiding dysfunction which was most likely related to his neurologic condition. In addition, this memorandum indicated that Huff stated that he urinates two times per day.

Ultimately, the district court found that Huff had violated his probation conditions. The district court, therefore, entered an order revoking Huff's probation and reinstating his probation with the condition that chemical testing analysis allow for submission of a blood sample. The term of Huff's probation remained unchanged. This appeal followed.

## STANDARD OF REVIEW

[¶ 8] "The imposition as well as the revocation of probation lies within the sound discretion of the district court, and we will not reverse the actions of the district court unless that discretion is abused." *Trujillo v. State*, 2002 WY 56, ¶ 6, 44 P.3d 943, ¶ 6 (Wyo.2002). We have a well-established standard for analyzing claims for abuse of discretion:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. [*Griswold v. State*, 2001 WY 14, ¶ 7, 17 P.3d 728, ¶ 7 (Wyo.2001)]. "In the absence of an abuse of discretion, we will not disturb the trial court's determination." *Id.* The burden is on the defendant to establish such abuse. *Trujillo* [*v. State* ], 2 P.3d [567] at 571 [(Wyo.2000)].

*Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758 ¶ 25 (Wyo.2001); *see also Gleason v. State*, 2002 WY 161, ¶ 29, 57 P.3d 332, ¶ 29 (Wyo.2002).

## DISCUSSION

[¶ 9] Huff asserts that the district court abused its discretion when it revoked his probation and then immediately reinstated his probation with additional conditions because the record indicated that Huff did not violate the terms of his probation. Huff argues that the record only showed that he was physically unable to urinate, making it impossible for him to comply with chemical testing as a specified condition of his probation. We strongly disagree.

[¶ 10] Our review of the record indicates that evidence was presented to allow the district court to conclude Huff violated the terms of his probation. Specifically, Huff testified that he did urinate at Hardee's just prior to his appointment with Locke. Further, Huff's statements to Locke that he did not urinate "from three days to two weeks"

is refuted by those statements recorded by Dr. Holst that Huff told him that he urinated two times a day. Further, the transcript of the revocation hearing indicates that *after* the district court had already made its decision, Huff stated:

> I am paralyzed totally, my left side. That includes the urinary tract part of my body. I have no mechanism to turn it off and turn it on. When it runs, it runs; I dive into Hardee's. I do it on a run on the way to Rush Locke's office. I have no choice.

[¶ 11] Moreover, the record is patently clear that Huff was evasive, uncooperative, and hostile regarding Locke's efforts to secure a urine sample from him. Initially, when Huff was asked to confirm his condition, he told Locke that he had not seen a doctor for thirty years. In addition, when advised that he would need to return in two hours, Huff expressed his unhappiness with being asked to return, saying that it had cost him $8.00 for gas and oil to make the visit and threatening that he was going to bill the State for that amount. Thereafter, before even attempting to give a urine sample two hours later, Huff telephoned to say that he would not be able to produce a sample at 12:30 p.m. and advised Locke to simply proceed with the court papers. Huff further indicated that when Locke filed these pleadings with the court that he would request a trial and bring in doctor's testimony. Unarguably, Huff knew at that time that this approach was transparently elusive, would cause Locke additional time and effort, and would unnecessarily involve the court system.

[¶ 12] In order to give Huff the benefit of the doubt, Locke, with an abundance of patience, asked Huff to return the next day to give a urine sample. This favorable offer by Locke was met by Huff indicating that he had just minutes earlier urinated at Hardee's making it impossible for him to comply with Locke's request. Huff followed up this statement by making the request that Locke provide him with a sample bottle to take with him so he could provide a sample *within the next few weeks* which did not allow for proper monitoring procedures to be followed.

[¶ 13] Finally, although Huff indicated at the hearing that he would be willing to give a blood sample, he did not volunteer this information to Locke. Indeed, Huff testified at hearing that when these same issues arose with his previous probation officer, Huff had submitted a blood sample for testing. Nevertheless, Huff did not advise Locke of these facts. Hence, we hold that the district court did not abuse its discretion in revoking and then reinstating, with modified conditions, Huff's probation. To the contrary, the decision of the district court was based on sufficient evidence.

[¶ 14] The additional conditions do not prejudice Huff since he admitted that he would voluntarily submit to blood testing, and Huff had the implicit obligation to cooperate with probationary officials as a part of his probationary term in any event. In addition, submission to drug testing was always a condition imposed as a part of Huff's probation. Therefore, the district court merely changed the method of drug testing resulting in no prejudice or harm to Huff.

[¶ 15] Probation officers are required to ensure that the terms of probation are followed by those placed on probation by the court. Similarly, those placed on probation are required to strictly comply with the terms of probation specified by the court or risk the sure consequence that such probationary terms will be modified or that probation will be revoked outright.

### CONCLUSION

[¶ 16] For the foregoing reasons, the order of the district court revoking and then reinstating Huff's probation, with modifications, is affirmed.