2012 WY 9

**Timothy Paul SCHAEFFER,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–11–0060.**

Supreme Court of Wyoming.

Jan. 20, 2012.

1048

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel. Argument by Ms. Olson.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Senior Assistant Attorney General. Argument by Mr. Rehurek.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The appellant, Timothy Paul Schaeffer, was convicted of one count of aggravated assault and battery. In this appeal from that conviction, the appellant claims he was subjected to numerous errors which affected his right to a fair trial. Finding no error, we will affirm.

## ISSUES

[¶ 2] 1. Whether the district court abused its discretion when it did not appoint substitute counsel.

2. Whether the district court denied the appellant his right to self-representation.

3 Whether the appellant was physically restrained excessively during the trial.

4. Whether plain error occurred when the trial court did not instruct the jury to disregard the fact that the appellant was physically restrained.

5. Whether the district court erred when it did not order a competency hearing during trial.

6. Whether the district court abused its discretion when it denied the appellant's motion for new trial as untimely.

7. Whether the district court engaged in judicial bias.

8. Whether there was sufficient evidence presented that the appellant's flare gun was a deadly weapon.

9. Whether plain error occurred when the State referred to allegedly incorrect and improper information at the sentencing hearing.

## FACTS

[¶ 3] The appellant was convicted of one count of aggravated assault and battery after he waved around a flare gun during an altercation at a bar. Due to the number of issues presented in this appeal, additional facts will be discussed when relevant.

## DISCUSSION

### *Whether the district court abused its discretion when it did not appoint substitute counsel*

[¶ 4] On the second day of trial, the trial court was given a letter written by the appellant in which he complained extensively about his counsel's performance on the first day of trial.[1] The letter aired general grievances about counsel's cross-examination of witnesses at trial, how often counsel visited the appellant, and that counsel failed adequately to consider the appellant's medical issues. Because counsel was unaware of the letter, the trial court recessed so that counsel could discuss the appellant's concerns with him in private. After the recess, counsel informed the court that the appellant wanted "to fire" current counsel, but did not wish to proceed *pro se*. The trial court then advised the appellant that he had the right to counsel, but that another attorney would not be appointed to represent him. The appellant informed the court that he wanted to hire his own attorney, but had not made any efforts to find one. The trial court stated: "I want to make sure I understand that it is your position that you do not want to go forward without an attorney this morning; correct?" To which the appellant replied, "[c]orrect."

[¶ 5] The appellant then began to explain that he did not have the mental capacity to represent himself, but then indicated that he "will go forward if [he has] to," and that he wanted to do it without the assistance of current counsel, as "he is obviously selling [him] out." The following exchange then occurred:

THE COURT: Is it your desire to waive your right to counsel and go forward pro se. [sic]

[THE APPELLANT]: I want—You mean to tell me I cannot have—Forget it.

THE COURT: All right, I am going to take that as—

[THE APPELLANT]: Yes.

THE COURT:—a denial that he wishes to waive his right to counsel. [Defense counsel], you will continue to act as his attorney. The Court has not observed anything that would indicate you cannot continue to act in that capacity.

[¶ 6] The appellant argues that during that exchange the trial court failed to inquire sufficiently of whether a conflict of interest existed between counsel and the appellant. While his argument is not entirely clear, the only logical basis for this argument is a challenge to the trial court's decision not to appoint substitute counsel for the appellant.

[¶ 7] This Court reviews a trial court's decision not to appoint substitute counsel for an abuse of discretion:

"While a trial court has the power in its discretion to appoint substitute counsel, its refusal to do so is not error unless an abuse of discretion is shown. A factual showing of good cause for the appointment of substitute counsel is essential to the demonstration of an abuse of discretion, and good cause is to be found in incompetence, commitment to a position or an interest which would conflict with the furnishing of an effective defense to the accused, or other good reason to conclude that appointed counsel is unable to furnish effective assistance."

*Bell v. State*, 994 P.2d 947, 951 (Wyo.2000) (*quoting Irvin v. State*, 584 P.2d 1068, 1071 (Wyo.1978)). The Sixth Amendment does not guarantee a meaningful relationship with appointed counsel; the purpose of providing assistance of counsel is to ensure that criminal defendants receive a fair trial. *Bell*, 994 P.2d at 951. A defendant has no right to the appointed counsel of his choice nor to counsel who would blindly follow his instructions. *Vargas v. State*, 963 P.2d 984, 990 (Wyo.1998). In evaluat-

---

1. The appellant's letter, dated June 2, 2010, was not filed with the district court; therefore, technically it is not part of the district court record or the record on appeal before this Court. However, the letter was discussed and spurred significant events at the appellant's trial that are the subject of this appeal. Further, the record is clear that both parties at trial were given a copy of the letter, and the parties had access to the letter when preparing the briefs for this Court. For those reasons, this Court will consider the letter for the purpose of analyzing the issues presented.

ing Sixth Amendment claims, " 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.' " *Bell*, 994 P.2d at 951–51 (*quoting Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). A court's own evaluation of counsel and the effect of any substitution upon the scheduled proceedings are proper considerations in addition to the reasons given for a defendant's dissatisfaction. *State v. Stenson*, 132 Wash.2d 668, 940 P.2d 1239, 1272 (1997), *cert. denied*, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998).

*Allen v. State*, 2002 WY 48, ¶ 27, 43 P.3d 551, 560–61 (Wyo.2002).

[¶ 8] In *Allen*, we held that a trial court does have "a duty to make some formal inquiry into, or engage the defendant in a colloquy regarding, the defendant's reasons for dissatisfaction with his appointed counsel when substitution of counsel is requested." *Id.* at ¶ 32, 43 P.3d at 562. We further held, however, that "even if [an] appellant demonstrates that the district court did not properly address his motions to substitute counsel, he must demonstrate that the error was prejudicial to his case (i.e., that he was not afforded effective representation as guaranteed by the Sixth Amendment)." *Id.* (citing *United States v. Graham*, 91 F.3d 213, 221 (D.C.Cir.1996)).

[¶ 9] Here, the appellant's request for new counsel, in the form of the letter, was considered by the trial court. The court recessed so that counsel could discuss the letter with the appellant, and the court further engaged in colloquy with the appellant after he told his counsel he wanted to fire him. While the appellant suggests a more in-depth conversation should have taken place, our precedent simply requires that the trial court inquire into why the appellant was dissatisfied with his attorney. *Allen*, 2002 WY 48, ¶ 32, 43 P.3d at 562. The trial court was aware, from the two-page letter he personally received from the appellant, of why the appellant was dissatisfied. That information simply was reaffirmed when the trial court personally addressed the appellant and his counsel.

[¶ 10] It is also significant that this was not the first time the trial court had received a request from the appellant asking for the appointment of new counsel. One day before the trial was originally scheduled, the trial court held a hearing, which included a request from the appellant's first attorney to withdraw. Counsel explained that the appellant had sent her multiple letters questioning her ability to defend him, and that when she would visit him in the jail she was unable to engage in any meaningful communication. When given the chance to speak, the appellant told the trial court that he would feel more confident with any attorney other than the one currently appointed because he did not think she would ask the witnesses the right questions, she had been lying to him, she was hiding his medical records, and she was unethical. He also claimed she had been "rude, inconsiderate. Just pure evil to [ ] to put it bluntly." The trial court determined the situation to be "extraordinary" and ordered that new counsel be appointed.

[¶ 11] Taking all of these facts into consideration, we cannot say the trial court abused its discretion when it refused to appoint the appellant new counsel during the trial. The record shows that the appellant did not demonstrate that his attorney was incompetent or suffered from a conflict of interest which would justify a substitution of counsel. Instead, the record shows that the appellant was a difficult individual who was unhappy with any action taken by his attorneys. It is clear he wanted an attorney that was willing to conduct the investigation and trial in the precise manner the appellant wished. This is insufficient to show good cause. *See Vargas v. State*, 963 P.2d 984, 990 (Wyo.1998) (there is no right to counsel of defendant's choice nor a right to counsel who will blindly follow defendant's instructions). The language used by this Court in *Miller v. State*, 560 P.2d 739 (Wyo.1977), is also appropriate here: "From this record it is difficult to conceive what kind of lawyer could in any manner satisfy this uncooperative defendant." *Id.* at 741.

### Whether the district court denied the appellant his right to self-representation

[¶ 12] The appellant next claims that the trial court denied him his Sixth

Amendment right to self-representation. Because this involves a constitutional issue it is a question of law we review *de novo*. *Wilkie v. State*, 2002 WY 164, ¶ 4, 56 P.3d 1023, 1024 (Wyo.2002). We consider "the record as a whole when determining whether the defendant knowingly and voluntarily relinquished his right to representation of counsel." *Trujillo v. State*, 2 P.3d 567, 571 (Wyo.2000).

[¶ 13] The Sixth Amendment to the United States Constitution provides that all criminal defendants are entitled to the assistance of counsel; however, it also "guarantees the rights of every citizen to conduct his own defense." *Trujillo*, 2 P.3d at 573 (citing *Faretta v. California*, 422 U.S. 806, 832, 95 S.Ct. 2525, 2539, 45 L.Ed.2d 562 (1975)).

A defendant has a constitutional right to waive his right to counsel and to represent himself at criminal trial. However, to be valid, the trial judge must ensure that the waiver of counsel is "an intentional relinquishment or abandonment of a known right or privilege." *United States v. McConnell*, 749 F.2d 1441, 1450-51 (10th Cir.1984) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se*.

*Van Riper v. State*, 882 P.2d 230, 234 (Wyo. 1994) (quoting *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied*, 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992)). Ultimately, the trial court must determine that the defendant is waiving his right to counsel voluntarily, knowingly, and intelligently. *Bolin v. State*, 2006 WY 77, ¶ 31, 137 P.3d 136, 146 (Wyo.2006). When determining whether the defendant waived his right to counsel, "a reviewing court should indulge every reasonable presumption against waiver." *Wilkie*, 2002 WY 164, ¶ 5, 56 P.3d at 1025.

[¶ 14] The appellant argues that the trial court refused to allow him to represent himself, despite a request to do so. However, the record does not show that the appellant ever made a clear request to proceed *pro se*. While the letter the appellant submitted to the trial court on the second day of trial contained a multitude of complaints about his attorney, he never made a request to proceed *pro se*. After the appellant discussed the contents of the letter with his attorney privately, counsel informed the trial court: "His position, Your Honor, is that he does wish to fire me. But he ***does not wish to proceed pro se.***" (Emphasis added.) The trial court then informed the appellant that he had the right to counsel, he could waive that right, and the dangers of proceeding *pro se*. The appellant responded: "I would like to proceed, but I would like to hire my own attorney, Your Honor. I have a brain injury. A condition that has not been treated. [sic] I cannot proceed on my own." In an effort to be certain of the appellant's position, the trial court asked, "I want to make sure I understand that it is your position that you do not want to go forward without an attorney this morning; correct?" To which the appellant responded, "[c]orrect." The exchange is clear that the appellant did not want to proceed *pro se*; instead, he wanted a new attorney.

[¶ 15] The appellant relies solely upon the following muddled exchange:

[THE APPELLANT]: She said treatment would be recommended and I never got it. I never got treatment from [sic] my congenial [sic] bone disease or my condition that she said would be recommended in her evaluation, Your Honor. Whatever. I will go forward if I have to.

THE COURT: Well, the question is, do you want to do that with or without Mr. Jones?

[THE APPELLANT]: If I have to, I will.

THE COURT: Which one? With or without Mr. Jones?

[THE APPELLANT]: Well, he is obviously selling me out, Your Honor. Without.

THE COURT: Is it your desire to waive your right to counsel and go forward pro se[?]

[THE APPELLANT]: I want—You mean to tell me I cannot have—Forget it.

THE COURT: All right, I am going to take that as—

[THE APPELLANT]: Yes.

THE COURT: a denial that he wishes to waive his right to counsel. . . .

While the appellant believes this exchange suggests that he *"seemed* to be indicating that he *might* want to represent himself[,]" the exchange is ambiguous and equivocal at best. (Emphasis added.) The record as a whole shows that the appellant did not want to proceed *pro se,* and there are no facts to conclude that the appellant made "an intentional relinquishment or abandonment" of his right to counsel. *Van Riper,* 882 P.2d at 234. Therefore, the trial court did not err when it determined that the appellant did not waive his right to counsel.

### *Whether the appellant was physically restrained excessively during the trial*

 [¶ 16] On the second day of trial, after the trial court denied the appellant's request for new counsel, the appellant became belligerent. His behavior included gesturing "the finger" with both hands toward the court, cursing at the court, and charging the bench. Ultimately, the appellant was taken to the ground by two deputies, placed in handcuffs, and removed from the courtroom. After a recess, the trial court met with the State and defense counsel and briefly discussed the situation. The State informed the court that defense counsel had stated that the appellant had planned to have an outburst in court.

[¶ 17] After another recess, the trial court made a record of the earlier events. While doing so, the appellant continually interrupted the court and apparently again gestured "the finger" with both hands toward the court. The trial court allowed the appellant to explain why he should not be held in contempt of court and, after another profanity-laced tirade, the court determined contempt of court was appropriate. Thereafter, the trial court asked the county sheriff what types of security measures were available to ensure the safety of all of the participants in the trial. The sheriff stated that he would like to see the appellant stay in "belly chains, handcuffs and bracelets [ ] throughout the entire proceedings." The court further queried about alternatives to shackles, such as taser equipment. The sheriff informed the court that taser equipment was not readily available, nor does it give as much control over the individual.

[¶ 18] The trial court advised the sheriff that it had taken precautions to conceal foot shackles from the jury's view, but expressed continued concern regarding hand shackles. The court suggested that perhaps hand shackles would not be necessary if a deputy were seated near the appellant. The sheriff stated a different belly chain was available, and if the appellant cooperated, the jury would not see the hand shackles. Defense counsel, however, was concerned that the appellant would not be cooperative and would stand, putting the shackles in view of the jury. Immediately before the trial court made its decision regarding the shackling, the appellant stated: "[Y]ou will never get me to cooperate. I guarantee you." The following exchange then occurred:

THE COURT: I am going to allow you to participate in this trial—

[THE APPELLANT]: Oh, boy, thank you.

THE COURT:—with shackles on, but hands unbound.

[THE APPELLANT]: Oh, boy, thank you.

THE COURT: If you disrupt whatsoever—

[THE APPELLANT]: All right.

THE COURT: You will be removed from the courtroom.

[THE APPELLANT]: Oh, gee.

THE COURT: And you will not be allowed to participate in the proceedings any further.

[THE APPELLANT]: Oh, boy. You betsha.

THE COURT: In fact, I am changing my mind. You are continuing the interruptions and behavior.

[THE APPELLANT]: You will not get a problem if I get an MRI.

THE COURT: I am changing my mind. You will not be able to participate without restraint. You will go forward with hand shackles.

Despite the court's warnings, the appellant continued to argue with the court until he was escorted out of the courtroom. When he returned to the courtroom, he remained in shackles for the duration of the proceedings.

[¶ 19] The appellant claims the trial court erred when it ordered he be restrained in a belly chain, handcuffs, and shackles. He argues the trial court did not make detailed findings to justify the use of the hand shackles and that too much deference was given to the sheriff's recommendations. A trial court's decision to physically restrain a defendant is reviewed for an abuse of discretion. *See Asch v. State,* 2003 WY 18, ¶ 65, 62 P.3d 945, 965 (Wyo.2003); *Urbigkit v. State,* 2003 WY 57, ¶ 24, 67 P.3d 1207, 1219 (Wyo.2003).

[¶ 20] "The shackling of a criminal defendant in the presence of a jury is universally condemned, although reversal of a conviction in such circumstance is not automatic." *Asch,* 2003 WY 18, ¶ 57, 62 P.3d at 962. To allow otherwise would infringe upon the defendant's right to the presumption of innocence, which is "a basic component of a fair trial under our system of criminal justice." *Id.* Further, the use of physical restraints tends to prejudice the jury against the defendant. *Id.* However, if "impelling necessity demands the restraint of a prisoner to secure the safety of others and his own custody," restraint may be appropriate. *Id.* "A trial judge must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury. That discretion must be founded upon a factual basis set forth in the record." *Id.* at 963.

[¶ 21] In order to ensure a trial free from inherent prejudice,

defendants shall not be shackled or otherwise physically restrained in the courtroom during a jury trial, nor shall other exceptional security measures be utilized, unless the State has first moved that such measures be utilized, the court has heard such motion, and after allowing the defendant an opportunity to contest the motion, the court has stated on the record the compelling reasons justifying the measures.

*Asch,* 2003 WY 18, ¶ 62, 62 P.3d at 964. The State has the burden of demonstrating that the restraints are necessary and are the "least drastic effective measures available." *Id.* Further, "[t]he trial court must consider alternatives, and may not rely blindly on the judgment of correctional officers." *Id.* When exercising its discretion, the court should consider:

[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes, his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and the mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

*Id.* (quotation marks omitted).

[¶ 22] Here, the technical requirements of *Asch* are not necessarily reflected in the record. The trial court, however, generally complied with the spirit of *Asch. See Urbigkit,* 2003 WY 57, ¶ 23, 67 P.3d at 1219. In *Asch* and *Urbigkit,* the actions that led to the defendants being restrained occurred outside of the trial court's presence, requiring the State to file a motion to bring the matter to the court's attention. In this case, the appellant's behavior that led to the restraints occurred directly in front of, and was directed toward, the trial court. Therefore, in this particular circumstance, a motion filed by the State was not necessary, as the court experienced the behavior first-hand, and the behavior is reflected in the record.

[¶ 23] The appellant and his attorney were given the opportunity to express their opinions about the restraints, and the only concern counsel expressed was "whether or not [his] client would cooperate and not stand up." The appellant and his counsel did not object to the notion of the appellant being restrained in general, and did not object to the extent of the shackling ordered by the court. The record also demonstrates that the trial court took into consideration methods other than shackling to ensure courtroom security. Unfortunately, those alternatives were not readily available or as effective as shackling. While the decision to shackle the appellant was consistent with the recommendation of the sheriff, it does not appear the trial court "[relied] blindly on the judgment" of the sheriff. *See Asch,* 2003 WY 18, ¶ 62, 62 P.3d at 964. Initially, the court had decided not to require hand shackles, despite the sheriff's opinion that the shackles were necessary. It was only after the appellant's continued disruptive behavior that the court concluded the shackles were necessary.

[¶ 24] While the record does not demonstrate that the trial court went through an organized analysis of all the factors suggested in *Asch,* the record does show that the factors that were applicable to the circumstances were considered. The appellant was charged with aggravated assault and battery and had engaged in disruptive and potentially violent behavior directed towards the court. The court was informed that the appellant had planned to have an "outburst" in the courtroom. Additionally, despite repeated warnings from the court, the appellant continued to engage in disruptive behavior and "guarantee[d]" the court that it "will never get [him] to cooperate." Based upon this behavior, we cannot say the trial court abused its discretion in determining that the appellant required hand and feet shackles to ensure the safety of everyone in the courtroom.

***Whether plain error occurred when the trial court did not instruct the jury to disregard the fact that the appellant was physically restrained***

■■■■ [¶ 25] The appellant testified on his own behalf at trial. In order to keep the jury from seeing the appellant in the shackles, the trial court allowed the appellant to testify from counsel table instead of the witness stand. The bottom of the table was blocked so the jury could not see the foot shackles and, apparently a specific belly chain was used to keep the appellant's hand shackles from the jury's view as well. Unfortunately, the court's attempts to keep the jury from viewing the hand shackles were undermined when the appellant, on more than one occasion, stood up during his testimony, allowing the jury to see the shackles. The court stated: "The Court's observation is that he did it at his own detriment after being cautioned, and he did it on more than one occasion. In fact, on several occasions."

■■■■ [¶ 26] The appellant claims that he was never warned about the potential prejudice associated with the jury seeing his shackles, and that the trial court should have given an instruction to the jury to disregard the fact that he was in shackles. The appellant never requested an instruction, nor did he object to the district court's failure to give one. As we pointed out in *Bloomer v. State,* 2010 WY 88, 233 P.3d 971 (Wyo.2010):

> Rule 30(a) of the Wyoming Rules of Criminal Procedure states in relevant part:
>
> > No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection.
>
> The purpose of this rule is to prevent unnecessary new trials caused by instructional errors that the trial court could easily have corrected if they had been brought to its attention at the proper time. In essence, the rule forecloses appellate review of the alleged instructional error in this case unless it rises to the level of plain error. Under the plain error rule, [the appellant] must demonstrate, by reference to the record, the existence of a clear and unequivocal rule of law which was transgressed in a clear and obvious, not merely arguable, way and resulting prejudice to a substantial right.

*Id.* at ¶ 9, 233 P.3d at 974 (internal citations omitted).

[¶ 27] Here, the appellant has failed to engage in any plain error analysis. Our independent review, however, shows that the trial court did not commit plain error when it allegedly did not warn the appellant or instruct the jury about the shackles. While the record is clear the court did not give the jury instruction, the record does not clearly show the appellant was not warned about the potential prejudice of the jury seeing the shackles. The appellant was present when the court engaged in a thorough conversation with the sheriff, State, and defense counsel regarding the use of the shackles. This included concerns that the jury would see hand shackles, and that the appellant's cooperation would be necessary to insure that they were not visible. In fact, defense counsel expressed apprehension that the appellant would stand up while wearing the shackles, but hoped he would be cooperative. This was followed by the appellant's declaration that he would never cooperate. The appellant followed through on that threat when he stood up several times during his testimony for no apparent reason. Based upon this record, we cannot say the appellant was uninformed of the dangers of letting the jury see his shackles. Instead, the record suggests he knew the jury was not to see the shackles and intentionally chose to expose them nonetheless.

[¶ 28] Further, we cannot say the trial court violated a clear and unequivocal rule of law when it did not instruct the jury to disregard the shackles. The appellant has cited three cases from different state courts for the proposition that a trial court is required to give a *sua sponte* instruction in this type of circumstance. While those cases show that trial courts in those jurisdictions are charged with *sua sponte* instructing the jury, they do not show a clear and unequivocal violation of Wyoming or federal law. While it may have been better to give an instruction, neither our law nor federal law has ever required such and, thus, the appellant has failed to demonstrate plain error. *See Wilson v. McCarthy,* 770 F.2d 1482, 1485 (9th Cir.1985) ("Although no instruction was requested, the better course may have been

for the trial court *sua sponte* to give an instruction concerning the shackles.... Nevertheless, we decline to impose upon the trial court the mandatory responsibility of giving such an instruction when the defendant fails to request one. The choice whether such an instruction should be given should ordinarily lie with the defendant. Rather, trial courts should retain flexibility in determining whether a jury instruction is appropriate in a given case.").

[¶ 29] Finally, the appellant has failed to demonstrate he suffered prejudice of a substantial right. The State presented substantial evidence that the appellant pointed the flare gun at the victim and waved it around the bar. That evidence was not disputed by the appellant. Instead, he chose to focus his defense on the fact that he had been assaulted by another individual, justifying his use of the flare gun. We are satisfied that the jury's knowledge of the appellant's shackles did not have an impact on its verdict.

### *Whether the district court erred when it did not order a competency hearing during trial*

[¶ 30] Approximately three months before the appellant's trial, the trial court was provided with a report from Dr. McCormick at the Wyoming State Hospital regarding the appellant's competency to proceed to trial. She concluded that the appellant did not suffer from any severe mental illness, but did suffer from a personality disorder. She warned that, due to his personality pathology, the appellant may behave inappropriately if he becomes angry or feels he has been wronged, but the inappropriate behavior is the result of a choice and not mental illness. Dr. McCormick opined that the appellant was competent to proceed to trial. The appellant did not object to Dr. McCormick's conclusion, and the trial court determined that the appellant was competent to proceed.

[¶ 31] The appellant's competency was not raised again until the second morning of trial after the appellant requested to fire his counsel:

[DEFENSE COUNSEL]: That is the only issue that concerns me. I would like

to say I would—I am ready to proceed. I don't think he should proceed by himself. However, when I was talking to him in the other room he became very agitated and I asked him specifically, are you feeling like you comprehend what is going on and he did not give me a very good answer, Your Honor. I am a little concerned here. I am not trying to delay the trial at all. I am ready to go, but I question if we are looking, again—I hate to bring it up like de Shazer [sic], but he has exhibited some tendencies that are concerning to me.

The trial court found that counsel's concerns did not include any information that was not considered in the previous competency determination. Immediately thereafter, the appellant began engaging in the previously described disruptive behavior. After a recess, the trial court considered further argument from defense counsel and the State regarding the appellant's competency to proceed. The court concluded that the appellant's behavior was consistent with the information provided in the original competency evaluation by Dr. McCormick, and the appellant's behavior was a product of his unwillingness to cooperate and not due to incompetence or mental illness.

■■■■ [¶ 32] The appellant claims the trial court should have ordered a new competency evaluation after defense counsel expressed concerns about the appellant's ability to assist in his defense. When reviewing a trial court's decision not to order a further competency evaluation, we use the following standard of review:

> Once the trial court has "evaluated a defendant's competency by the correct standard, the second inquiry on review is whether the trial court's determination of a defendant's competency is fairly supported by the record of the proceeding at which the determination [is] made.... In other words, the substantial evidence standard of review governs the second inquiry."

**2.** Generally, a trial court's conclusion that a defendant is competent to proceed to trial is reviewed *de novo. Fletcher,* 2010 WY 167, ¶ 112, 245 P.3d at 330. Here, however, the appellant does not object to the trial court's initial finding that he was competent to proceed to trial. In-

*Fletcher v. State,* 2010 WY 167, ¶ 12, 245 P.3d 327, 330 (Wyo.2010) (quoting *deShazer v. State,* 2003 WY 98, ¶ 13, 74 P.3d 1240, 1245 (Wyo.2003)) (internal citation omitted).[2]

■■■■ [¶ 33] A trial court "has a continuing duty to monitor whether a defendant's competency should be evaluated. This continuing duty is recognized by both our statutes and our case law. *See* Wyo. Stat. Ann. §§ 7–11–303 and 7–11–304 [ (LexisNexis 2011) ]; *deShazer,* 2003 WY 98, ¶ 26, 74 P.3d at 1251." *Follett v. State,* 2006 WY 47, ¶ 15, 132 P.3d 1155, 1160 (Wyo.2006). However, if a defendant has been subject to a competency evaluation, "there must be 'reasonable cause to believe [that] the accused has a mental illness or deficiency making him unfit to proceed' before other evaluations are mandated[.]" *Id.* at ¶ 15, 132 P.3d at 1160 (quoting Wyo. Stat. Ann. § 7–11–303(a)).

[¶ 34] We find that the trial court's decision not to revisit the competency issue is supported by substantial evidence in the record. In the original competency evaluation, Dr. McCormick specifically stated that the appellant may behave inappropriately if he becomes angry or feels he has been wronged, and that behavior is a result of personal choice. Further, she found that his paranoia and oversensitivity impairs his ability to cooperate with others if he feels slighted or disregarded. Despite these issues, she concluded he could conduct his defense in a rational manner and cooperate with his counsel. These findings are exactly what defense counsel relied upon when expressing his concerns to the trial court. Defense counsel informed the trial court that the appellant wanted to fire him because he felt he was being slighted or disregarded and, therefore, counsel did not feel the appellant could assist in his defense. Because there was no new information presented that would give "reasonable cause to believe [that] the accused has a mental illness or deficiency making him unfit to proceed," the trial court did not err when it determined further inquiry into the

stead, he argues that he should have received another competency evaluation. This limits our review to searching for substantial evidence to support the trial court's decision not to order another competency evaluation.

appellant's competency was not warranted. Wyo. Stat. Ann. § 7–11–303(a); *see Follett*, 2006 WY 47, ¶ 15, 132 P.3d at 1160.

### *Whether the district court abused its discretion when it denied the appellant's motion for new trial as untimely*

 [¶ 35] A trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *Schafer v. State*, 2008 WY 149, ¶ 21, 197 P.3d 1247, 1252 (Wyo.2008). "An abuse of discretion occurs [when] the district court could not have reasonably concluded as it did." *Id.*

[¶ 36] The appellant claims the trial court abused its discretion when it denied his untimely motion for new trial. At the sentencing hearing, the trial court informed the appellant's new attorney, who did not represent him at trial, that he had two weeks from the date of sentencing to file any "additional motions." The appellant believes this comment by the trial court granted him time beyond what is allowed in W.R.Cr.P. 33 to file a motion for new trial. We disagree.

[¶ 37] Rule 33(b) of the Wyoming Rules of Criminal Procedure is clear that a motion for new trial on any grounds other than newly discovered evidence "shall be made within 15 days after verdict or finding of guilty...." The rule also provides that the trial court may extend the time to file the motion, but not "more than 30 days from the date the verdict or finding of guilty is returned." W.R.Cr.P. 33(b). These time constraints are jurisdictional in nature and, therefore, the trial court is without jurisdiction to hear a motion for new trial outside the confines of the rule. *Pearson v. State*, 2003 WY 71, ¶ 6, 70 P.3d 235, 238 (Wyo.2003).

[¶ 38] Here, the jury entered its verdict on June 3, 2010; therefore, the trial court only had the authority to extend the filing deadline thirty days from that date. Further, the trial court did not have jurisdiction to render a decision on a motion for new trial filed after that timeframe. Since the sentencing hearing did not take place until December 1, 2010, the trial court's comment

that additional motions were due two weeks from that date could not have included a motion for new trial, because the date for properly filing that motion had long passed.

 [¶ 39] The appellant also makes a meager attempt to claim a timely *pro se* motion for new trial was filed, and the district court did not address it. This argument equally is unpersuasive. To the extent one could consider the appellant's letters to the trial court properly filed motions, those motions were deemed denied after 15 days.[3] W.R.Cr.P. 33(b). Further, the appellant has provided no authority to support his suggestion that these letters somehow preserved the issue for consideration in an untimely motion for new trial.

[¶ 40] The appellant's motion for new trial clearly was filed outside the temporal confines of W.R.Cr.P. 33(b), leaving the district court no jurisdiction to consider the motion. *Pearson*, 2003 WY 71, ¶ 6, 70 P.3d at 238. Further, W.R.Cr.P. 33 does not give the trial court the authority to extend the time frame of the rule. Therefore, the trial court could not have abused its discretion when it denied the motion as untimely, because it did not have jurisdiction to consider the motion.

### *Whether the district court engaged in judicial bias*

 [¶ 41] Next, the appellant claims he did not receive a fair trial because the trial judge was biased against him. To support his claim, the appellant argues that the trial court improperly refused to accept his guilty plea, and made comments that the appellant allowed the jury to see him in shackles to "his own detriment." Further, he claims the security measures taken after the appellant charged the bench demonstrate that the trial judge was so insulted and threatened by the appellant, bias had to exist.

 [¶ 42] "To demonstrate judicial bias, or prejudice, an appellant must show more than the fact that the trial court ruled against him, correctly or incorrectly, on a

---

**3.** This Court is not making a determination of whether the letters were properly filed motions. The answer to that question is irrelevant, as any

properly filed motion was deemed denied after 15 days. W.R.Cr.P. 33(b).

particular matter." *DeLoge v. State,* 2007 WY 71, ¶ 12, 156 P.3d 1004, 1008 (Wyo.2007). This Court has explained:

Bias is a leaning of the mind or an inclination toward one person over another. The "bias" ... must be personal, and it must be such a condition of the mind which sways judgment and renders the judge unable to exercise his functions impartially in a given case or which is inconsistent with a state of mind fully open to the conviction which evidence might produce.

*Pearson v. State,* 866 P.2d 1297, 1300 (Wyo. 1994).

[¶ 43] Here, the appellant has failed to demonstrate that the trial judge was swayed in a particular direction or that he was unable to exercise his functions impartially. While he appears discontent with the trial judge's decisions and statements on particular matters, this is insufficient to demonstrate bias. The appellant has failed to provide any analysis or case law that would allow this Court to find that the trial court exhibited any bias against the appellant. In fact, our independent review of the record reveals no evidence that the trial judge was biased. The judge's conduct, comments, and rulings were based on reasonable judgment and consistent with the law, and much of it was in response to the appellant's extraordinarily bad behavior. There is no merit in the appellant's claim.

### Whether there was sufficient evidence presented that the appellant's flare gun was a deadly weapon

[¶ 44] We will apply the following standard of review:

When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. We will not substitute our judg-

ment for that of the jury [and] our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Breazeale v. State,* 2011 WY 10, ¶ 13, 245 P.3d 834, 839 (Wyo.2011) (quoting *Masias v. State,* 2010 WY 81, ¶ 8, 233 P.3d 944, 947 (Wyo.2010)).

[¶ 45] The appellant claims that there was insufficient evidence presented to the jury to demonstrate that the flare gun was a "deadly weapon" because there was no evidence that the flare gun was a "firearm" or that the gun was loaded. This Court disagrees, as the record demonstrates that sufficient evidence was presented to the jury that would allow it to find that the flare gun was a deadly weapon.

[¶ 46] A "deadly weapon" includes, but is not limited to, "a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury." Wyo. Stat. Ann. § 6–1–104(a)(iv) (LexisNexis 2011). Clearly, the flare gun used by the appellant constitutes a firearm. While "firearm" is not defined in the statutes, it "is not a word that requires us to supply a new or different definition because it is not ambiguous." *Harris v. State,* 2006 WY 76, ¶ 12, 137 P.3d 124, 128 (Wyo.2006). *Webster's II New College Dictionary* 429 (3d. ed. 2005) defines "firearm" as "[a] weapon capable of firing a missile, esp. a pistol or rifle using an explosive charge as a propellant." The jury was instructed, consistent with that definition, that a firearm means "any weapon which will or is designed to expel any projectile by the action of an explosive."

[¶ 47] The investigating officer testified that the flare gun, or what he referred to as a bird bomb gun, is regularly used to scare elk and deer out of haystacks. He explained that to use the gun, one places a bomb or ammunition into the barrel, places a primer underneath the hammer, and then cocks the hammer. When fired, the gun shoots the projectile approximately fifty to sixty yards

before it explodes like a very large fire-cracker. Further, the officer stated that, if the projectile were to hit a person, it would "absolutely" cause severe injury and possibly death. This testimony aptly demonstrates that the flare gun was capable of firing a missile using an explosive charge and was capable of causing death or serious bodily injury.

[¶ 48] Additionally, the evidence was sufficient to establish that the flare gun was a "device [or] instrument ... which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury." Wyo. Stat. Ann. § 6-1-104(a)(iv). Not only did the evidence establish that the flare gun shoots a projectile that explodes, it also established that the appellant was waving the gun around in a threatening manner, pointing it directly at certain individuals at close range, all the while threatening to shoot or kill everyone in the room. A jury could easily conclude that the way the appellant was using the flare gun could reasonably produce death or serious bodily injury.

[¶ 49] The appellant also attempts to escape liability by pointing out that there was no evidence presented to the jury that the flare gun was loaded at the time of the incident. That argument, however, is directly contrary to this Court's precedent on the issue. *See Dike v. State*, 990 P.2d 1012, 1018–19 (Wyo.1999). In *Dike*, we explained:

> The aggravated assault statute enhances the punishment if the defendant uses a deadly weapon because deadly weapons cause a greater degree of fear in the person being assaulted. The victim does not know that the firearm is not loaded, and his apprehension and consequent reactions will be the same as if the firearm were loaded. He may try to escape or defend himself, conceivably putting himself and others into a precarious and dangerous situation.

*Id.* at 1019. In following that reality, we held that that the definition of "deadly weapon" includes unloaded firearms. *Id.* Here, it did not matter that the flare gun was unloaded—the victim was subjected to the same

fear and anxiety that would have been present if the flare gun had been loaded.

[¶ 50] The jury was presented with substantial evidence that the appellant waved and pointed a flare gun in an extremely hostile manner, and that the flare gun was capable of causing serious bodily injury or death. Therefore, there was sufficient evidence to support the jury's decision that the flare gun was a deadly weapon for the purposes of the crime of aggravated assault and battery.

### *Whether plain error occurred when the State referred to allegedly incorrect and improper information at the sentencing hearing*

[¶ 51] Finally, the appellant asserts that the State provided incorrect and improper information to the trial court, which in turn the court relied upon in imposing sentence. Specifically, the appellant claims the State erroneously informed the court that the appellant had been previously convicted of a felony, and that the State improperly informed the court of the appellant's behavior in jail. The appellant's objection to this information was not raised before the trial court, thus, we use the following standard of review:

> When imposing sentence, the trial court is given broad discretion to consider a wide variety of factors about the defendant and his crimes. *Mehring v. State*, 860 P.2d 1101, 1115 (Wyo.1993); *Griebel v. State*, 763 P.2d 475, 477 (Wyo.1988). We will not disturb a sentencing decision absent a clear abuse of discretion. *Jones v. State*, 771 P.2d 368, 371 (Wyo.1989). In sentencing, due process provides a right to be sentenced only on accurate information. *Mehring*, 860 P.2d at 1117; *Clouse v. State*, 776 P.2d 1011, 1014 (Wyo.1989). On appeal, the defendant must demonstrate that the trial court relied upon the statements in sentencing to prevail. *Mehring*, [860 P.2d] at 1115. "However, when no objection is made concerning the consideration of a particular factor, review is necessarily confined to a search for plain error. Plain error, as we have often stated, occurs when the record clearly shows an error

that transgressed a clear and unequivocal rule of law which adversely affected a substantial right." *Hornecker v. State*, 977 P.2d 1289, 1291 (Wyo.1999); *see also Craver v. State*, 942 P.2d 1110, 1115 (Wyo.1997). *Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo.2004).

 [¶ 52] The State's representation that the appellant had been convicted of a previous felony and his behavior in jail are both clearly reflected in the record. The appellant's argument fails, however, because he has not demonstrated a violation of a clear and unequivocal rule of law. The appellant claims the State incorrectly informed the trial court that he had been previously convicted of a felony. The appellant has a due process right that sentencing be based only upon accurate information. *Mehring v. State*, 860 P.2d 1101, 1117 (Wyo.1993). However, the record does not demonstrate that the State necessarily gave the trial court incorrect information. In fact, defense counsel explained that the previous conviction was originally a felony, but was later expunged. At most, the State presented information that, while technically incorrect, was not totally untrue, and was clarified by defense counsel. This does not amount to "a clear and obvious, not merely arguable," violation of a rule of law. *See Sanchez v. State*, 2011 WY 77, ¶ 25, 253 P.3d 136, 144 (Wyo.2011).

 [¶ 53] The appellant also has not shown that the State's discussion of his behavior in jail was a violation of a clear and unequivocal rule of law. "[A] sentencing decision cannot be based upon unreliable information, undocumented information, or inaccurate information." *Sandoval v. State*, 2009 WY 121, ¶ 8, 217 P.3d 393, 395 (Wyo. 2009) (quoting *Hubbard v. State*, 2008 WY 12, ¶ 24, 175 P.3d 625, 630 (Wyo.2008)). The appellant claims the rule was violated because his behavior in jail had not been admitted as evidence against him in his trial or was otherwise part of the record of the proceedings. This assertion is not supported by the record. The appellant's presentence investigation report included information that his behavior in jail had been poor; including belligerent behavior towards jail staff, prop-erty destruction, and refusing to follow rules and instructions. This information was properly before the trial court and, therefore, it was proper for the State to use that information in its sentencing recommendation.

[¶ 54] After reviewing the record, we find the appellant has failed to demonstrate the State violated a clear and unequivocal rule of law when it informed the trial court the appellant had a previous felony conviction or when it discussed his behavior in jail. Consequently, there was no plain error.

## CONCLUSION

[¶ 55] The trial court did not err when it did not allow the appellant to dismiss his attorney on the second day of trial. Additionally, the trial court did not violate the appellant's right to self-representation, as the appellant never made an unequivocal request to represent himself. The trial court did not require excessive physical restraints, and not instructing the jury regarding the shackles did not constitute plain error. After the appellant had initially been deemed competent to proceed, the circumstances at trial were not such that would have required an additional competency evaluation. The trial court did not have the authority to allow the appellant to file a motion for new trial outside the time confines of W.R.Cr.P. 33 and, therefore, it did not abuse its discretion when it denied the motion as untimely. There was sufficient evidence presented at trial that a flare gun is a deadly weapon as used in the crime of aggravated assault and battery. Finally, the trial court did not exhibit judicial bias against the appellant, and the State did not provide the trial court with inappropriate or incorrect information at the sentencing hearing.

[¶ 56] We affirm.