# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 119

**OCTOBER TERM, A.D. 2016**

**December 13, 2016**

JEREMIAH ANTHONY MARSHALL, a/k/a
JEREMIAH ANTHONY MAHONEY,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-16-0007, S-16-0111

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Patricia Lynn Bennett, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Micah Christensen, Student Intern.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Jeremiah Anthony Marshall, challenges his convictions of felony possession of methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii), and misdemeanor interference with a peace officer, in violation of Wyo. Stat. Ann. § 6-5-204(a).  He contends the district court erred by refusing to stay proceedings for purposes of a second competency evaluation.  We affirm.

*ISSUE*

[¶2]    Mr. Marshall presents a single issue:

> Did the district court err when it failed to suspend proceedings and order a competency evaluation?

*FACTS*

[¶3]    In November 2014, Mr. Marshall was a passenger in a vehicle that was stopped for driving with its high-beam headlights on.  During the stop, the officer learned from the driver of the vehicle that Mr. Marshall had given the officer a false name.  The officer conducted a pat-down search of Mr. Marshall and detected an object in his left pant leg pocket.  When the officer inquired about the object, Mr. Marshall ran from the officer.  After a foot chase, he was apprehended and arrested.  Officers searched the path of the foot chase and found a case containing two glass pipes and a plastic bag with methamphetamine inside.

[¶4]    Mr. Marshall was charged with one count of felony possession of methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii), one count of interference with a peace officer, in violation of Wyo. Stat. Ann. § 6-5-204(a), and one count of forgery, in violation of Wyo. Stat. Ann. § 6-3-602(a).  The forgery charge was subsequently dismissed.  After he was charged, Mr. Marshall's appointed counsel filed a motion to suspend proceedings pending a competency evaluation.  At the hearing on that motion, Mr. Marshall's counsel noted that Mr. Marshall had a self-reported traumatic brain injury and had trouble recognizing that he had previously spoken with counsel.  The court determined that there was reasonable cause to believe that Mr. Marshall had a mental illness or deficiency making him unfit to proceed and ordered an inpatient competency evaluation to be conducted at the Wyoming State Hospital.

[¶5]    Mr. Marshall was evaluated for approximately six weeks at the hospital by Dr. David Carrington, a board-certified forensic psychiatrist.  Dr. Carrington provided a written report in which he concluded that Mr. Marshall "possesses a rational as well as a factual understanding of his legal charges and of basic legal procedure in general."  The report states:

1

It is my opinion that though [Mr. Marshall] expresses some seemingly paranoid behaviors and makes paranoid statements [they] are due to personality factors including the sense of entitlement and manipulation more than they are related to the presence of a major mental illness. It is my opinion that [Mr. Marshall] is currently able to cooperate with his attorney with a reasonable degree of rational understanding and participate appropriately and effectively in his defense if he chooses to do so. Thus, it is my opinion with a reasonable degree of medical and psychiatric certainty that [Mr. Marshall] is presently fit to proceed on his current charges.

[¶6] After receiving the report, the court convened a competency hearing. At that hearing, Mr. Marshall noted that he did not agree with certain aspects of the evaluation. As a result, the court ordered a contested hearing in accordance with Wyo. Stat. Ann. § 7-11-303(f) (LexisNexis 2013).

[¶7] At the contested hearing, Dr. Carrington testified regarding the findings in his report. Neither party objected to the report or expressed any disagreement with respect to the finding that Mr. Marshall was fit to proceed. Accordingly, the court found Mr. Marshall competent under Wyo. Stat. Ann. § 7-11-303.

[¶8] The matter proceeded to trial in November 2015. The jury found Mr. Marshall guilty of interference with a peace officer but was unable to reach a verdict with respect to the felony possession charge. Mr. Marshall was sentenced to time served for the conviction of interference with a peace officer, and the court declared a mistrial on the possession charge. A new trial on the possession charge was set for April 2016.

[¶9] In December 2015, Mr. Marshall wrote a letter to the court requesting an appeal of his conviction of interference with a peace officer. He also requested dismissal of the possession charge. The court held a hearing to address the issues raised in the letter. At that hearing, defense counsel raised the possibility that Mr. Marshall may warrant a second competency evaluation. In response, the court noted that Mr. Marshall "has not been directly responsive to my questions, sort of rambles on about all sorts of concerns, but I am able to follow him." Ultimately, the court concluded that a second competency evaluation was not warranted:

[W]e addressed competency after evaluation at the Wyoming State Hospital . . . and Mr. Marshall was found competent to proceed. And if there's going to be a change in that, I think we need a proper motion, the opportunity of the State to be

2

prepared, the Court to review things, and we can take that up again. But I don't see anything right now that's before me that would indicate we could not have a retrial in this case.

Mr. Marshall subsequently filed a notice of appeal from his conviction for interference with a peace officer. That appeal was docketed in this Court as Case No. S-16-0007 and was stayed pending resolution of the felony possession charge.

[¶10] On March 1, 2016, defense counsel filed a motion to suspend proceedings for a competency evaluation. The motion asserted that Mr. Marshall was "not eating at the jail" and that he was "refusing to meet with counsel at this time." A hearing on the motion was scheduled for March 18, 2016. Before the competency hearing began, however, the parties advised the court that Mr. Marshall would enter an *Alford* plea to the felony possession charge. Defense counsel then withdrew the motion to suspend proceedings for a second competency evaluation.

[¶11] Before accepting Mr. Marshall's plea, the district court inquired as to whether he understood the nature of the charge and the consequences of entering an *Alford* plea. The court also asked whether Mr. Marshall was voluntarily changing his plea and explained to Mr. Marshall his right to persist in his not guilty plea and his rights concerning trial. The court asked Mr. Marshall if he consented to the plea agreement, to which Mr. Marshall replied, "Yes." The court found that:

> [T]he plea entered by Mr. Marshall pursuant to *Alford versus North Carolina* where he would not contest the entry of the guilty plea and conviction, but he would stand by his right to disagree with and not make an admission of the underlying factual basis nor of his actual possession of the methamphetamine is accepted by the Court. The Court notes that the defendant is alert and not under the influence of anything which would adversely affect his ability to understand this proceeding, that he's competent to enter a plea here today. And I note he has taken the time to ask follow-up questions, to give some thought to what's being proposed here today, and has knowingly responded to the questions that preceded the entry of the plea; that the plea is made knowingly and voluntarily.

After finding Mr. Marshall competent to enter his plea to felony possession of methamphetamine, the district court accepted the plea and sentenced him to time served on that charge. Mr. Marshall timely appealed from the judgment and sentence. That appeal was docketed as Case No. S-16-0111. The appeals were consolidated for purposes of briefing and decision.

3

## STANDARD OF REVIEW

[¶12]  We apply the substantial evidence standard when reviewing a trial court's decision not to order a further competency evaluation.

> Once the trial court has "evaluated a defendant's competency by the correct standard, the second inquiry on review is whether the trial court's determination of a defendant's competency is fairly supported by the record of the proceeding at which the determination [is] made. . . . In other words, the substantial evidence standard of review governs the second inquiry."

*Schaeffer v. State*, 2012 WY 9, ¶ 32, 268 P.3d 1045, 1058 (Wyo. 2012) (quoting *Fletcher v. State*, 2010 WY 167, ¶ 12, 245 P.3d 327, 331 (Wyo. 2010)).

## DISCUSSION

[¶13]  In his only issue, Mr. Marshall claims the district court erred when it failed to suspend proceedings and order a second competency evaluation.  According to Mr. Marshall, the district court was required to order a second competency evaluation under Wyo. Stat. Ann. § 7-11-303 because there was reasonable cause to believe he was unfit to proceed.  He contends that his mental health deteriorated between the time he was found fit to proceed, in October 2015, and the time he entered his plea, in March 2016.  He further contends that Wyo. Stat. Ann. § 7-11-303 requires the district court to order a competency evaluation after a motion is filed even where, in cases like the present, the defense withdraws its motion.  Mr. Marshall requests a remand to the district court for further proceedings.

[¶14]  Mr. Marshall claims the district court's refusal to order a second competency evaluation provides grounds to reverse his conviction of felony possession as well as his conviction of misdemeanor interference with a peace officer.  As noted above, however, his conviction of interference with a peace officer was issued prior to his request for a second competency evaluation.  Considering that the specific behavior alleged as grounds for an additional competency evaluation occurred after the misdemeanor conviction was issued, Mr. Marshall has provided no argument or analysis relevant to the claim that his misdemeanor conviction should be overturned.  Accordingly, we summarily affirm Mr. Marshall's conviction of interference with a peace officer.  *Serna v. State*, 2013 WY 87, ¶ 7, 305 P.3d 1142, 1143 (Wyo. 2013) ("We may decline to consider claims unsupported by cogent argument and pertinent legal authority.") (citing *DeLoge v. State*, 2012 WY 128, ¶ 11 n.2, 289 P.3d 776, 779 n.2 (Wyo. 2012)).

[¶15] We turn, then, to an evaluation of Mr. Marshall's claim with respect to his conviction of felony possession. Mr. Marshall correctly notes that a district court has a continuing duty to monitor whether a defendant's competency should be evaluated:

> A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so "competently and intelligently." *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), quoting *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The same standard of competency applies whether a defendant goes to trial or pleads guilty. *Godinez*, 509 U.S. at 398[-399]. The United States Supreme Court has ruled that a defendant is competent, under the standards of due process, if he has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). The determination of whether a defendant is mentally fit to proceed must be made by the trial court. *Hayes v. State*, 599 P.2d 558, 563 (Wyo. 1979). "It is not in the nature of a defense to the charge. It is a threshold issue, necessary to be resolved to prevent a violation of due process through conviction of a person incompetent to stand trial." *Id.* Moreover, the competency requirement continues from the time of arraignment through sentencing. *See Godinez*, 509 U.S. at 403 (Kennedy, J., concurring); *deShazer v. State*, 2003 WY 98, ¶ 20, 74 P.3d 1240, 1248 (Wyo. 2003).

*Follett v. State*, 2006 WY 47, ¶ 8, 132 P.3d 1155, 1158 (Wyo. 2006).

[¶16] The continuing duty to evaluate competency is also expressed in Wyo. Stat. Ann. § 7-11-301 *et. seq*, which set forth the requirements for determining whether a criminal defendant is competent to stand trial. Wyo. Stat. Ann. § 7-11-303 provides, in relevant part, as follows:

> **§ 7-11-303. Examination of accused to determine fitness to proceed; reports; commitment; defenses and objections.**
>
> (a) If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is

5

reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.

(b) The court shall order an examination of the accused by a designated examiner. The order may include, but is not limited to, an examination of the accused at the Wyoming state hospital on an inpatient or outpatient basis, at a local mental health center on an inpatient or outpatient basis, or at his place of detention.

Importantly, however, our precedent clearly establishes that "reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed" must be present before a competency evaluation is ordered:

A trial court "has a continuing duty to monitor whether a defendant's competency should be evaluated. This continuing duty is recognized by both our statutes and our case law. *See* Wyo. Stat. Ann. §§ 7-11-303 and 7-11-304 [(LexisNexis 2011)]; *deShazer*, 2003 WY 98, ¶ 26, 74 P.3d at 1251." *Follett v. State*, 2006 WY 47, ¶ 15, 132 P.3d 1155, 1160 (Wyo. 2006). However, if a defendant has been subject to a competency evaluation, "there must be 'reasonable cause to believe [that] the accused has a mental illness or deficiency making him unfit to proceed' before other evaluations are mandated[.]" *Id.* at ¶ 15, 132 P.3d at 1160 (quoting Wyo. Stat. Ann. § 7-11-303(a)).

*Schaeffer v. State*, 2012 WY 9, ¶ 33, 268 P.3d 1045, 1058 (Wyo. 2012).

[¶17] Mr. Marshall interprets Section 303(a) to mean that a motion to suspend proceedings, by itself, supplies reasonable cause to believe the accused is unfit to proceed. We disagree. That interpretation would allow the proceedings to be suspended without any evidentiary or factual basis. We do not believe that such a result was intended by the legislature. Further, Mr. Marshall's interpretation is inconsistent with our precedent which, as noted above, requires "'reasonable cause to believe [that] the accused has a mental illness or deficiency making him unfit to proceed' before other evaluations are mandated." *Schaeffer*, ¶ 33, 268 P.3d at 1058; *see also United States v. McEachern*, 465 F.2d 833, 837 (5th Cir. Tex. 1972) ("[T]he phrase 'upon such a motion' [does not] make[] an automaton of the court, requiring that a motion be granted merely because it has been filed."). Contrary to Mr. Marshall's assertions, his motion did not, by itself, compel the district court to suspend proceedings for a competency evaluation under Wyo. Stat. Ann. § 7-11-303.

6

[¶18] Mr. Marshall also asserts there was reasonable cause to believe he was unfit to proceed at the time of his second motion to suspend the proceedings. He points to his December 2015 letter to the district court and statements at the March 2016 hearing to the effect that he was afraid to eat food handled by certain employees at the Natrona County Detention Center. He also notes that he expressed concern that he would be involuntarily committed to the Wyoming State Hospital. According to Mr. Marshall, these statements "highlight [his] fears, which possibly influenced his decision to agree to the plea offer." These statements, however, are consistent with the behavior noted in Mr. Marshall's original competency evaluation. In the report of his evaluation, Dr. Carrington noted that "[Mr. Marshall] was quite particular with regard to his food and meals. He requested double portions, but when they were not served on separate trays he would refuse to accept the meals unless they were provided to him by female staff." Dr. Carrington concluded that this behavior was not the product of a major mental illness:

> In short, [Mr. Marshall] was felt to be somewhat entitled and demanding. Some of his behaviors could be interpreted as paranoid, but this was felt to be largely characterologic or personality driven rather than the product of a major mental illness such as schizophrenia or bipolar disorder.
>
> . . .
>
> He related to various staff members including this examiner, that he would prefer to stay in the hospital and not return to jail as things were far more comfortable here. In essence, although [Mr. Marshall's] behavior at times appeared to be paranoid or odd, it was the consensus of the staff members as well as of this examiner that the primary motivation of [Mr. Marshall's] behaviors were both to remain at the hospital and to prolong the evaluation process as long as possible, as well as to gratify his desire for female companionship and his need and desire to be special, different or more important than the other patients.

Dr. Carrington concluded that "Some of [Mr. Marshall's] behaviors and statements at times appear to be somewhat paranoid, however, this appears to be related more to his personality, his sense of entitlement, his efforts to control his environment and his circumstances more than it is related to any form of mental illness."

[¶19] The report of Mr. Marshall's original competency evaluation makes clear that his behavior and statements prior to and during the hearing in March 2016 were not different or distinct from the behaviors presented during the initial competency evaluation in

7

October 2015. Because there was no new information presented that would give "reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed," we find substantial evidence to support the district court's determination that further inquiry into Mr. Marshall's competency was not warranted. *See Schaeffer*, ¶ 34, 268 P.3d at 1058-59; *Follett*, ¶ 15, 132 P.3d at 1160.

[¶20] Mr. Marshall contends this case is similar to *deShazer v. State*, 2003 WY 98, ¶ 28, 74 P.3d 1240, 1252 (Wyo. 2003), where we held that the district court's failure to order a competency evaluation *sua sponte* was reversible error. That case, however, is distinguishable. In *deShazer*, we noted that

> Considerable evidence was seized at the time deShazer was arrested, including tape-recorded "rantings" and typewritten and handwritten letters and notes, most of which might have raised the spectre of mental illness or incompetency even in the mind of a lay observer. Those materials strongly suggested that deShazer's "state of mind" was that he intended to kidnap and kill the victim and then take his own life.

*Id.*, ¶ 15, 74 P.3d at 1245. Moreover, questions about the defendant's competency were raised at several points during the proceedings. *Id.*, ¶¶ 16-19, 74 P.3d at 1245-47. In contrast to the present case, however, the district court did not hold a competency hearing, order that a competency evaluation be conducted, or make a determination of competency prior to trial. Accordingly, *deShazer* does not provide an analogous fact pattern for comparison to the present case.

[¶21] Finally, we note that "the standard for determining competence to stand trial is the same as the standard for determining competence to plead." *Major v. State*, 2004 WY 4, ¶ 19, 83 P.3d 468, 477 (Wyo. 2004). At Mr. Marshall's change of plea hearing, the district court inquired as to whether he understood the nature of the charge and the consequences of entering an *Alford* plea. Mr. Marshall responded that he understood the nature of the charge and the possible consequences of the plea. Based on Mr. Marshall's answers and his ability to engage in meaningful and productive dialogue, the court found he was competent to enter his plea:

> The Court notes that the defendant is alert and not under the influence of anything which would adversely affect his ability to understand this proceeding, that he's competent to enter a plea here today. And I note he has taken the time to ask follow-up questions, to give some thought to what's being proposed here today, and has knowingly responded to the questions that preceded the entry of the plea; that the plea is

made knowingly and voluntarily.

> I note [that it's] with some reluctance, but he did voluntarily enter the plea without any improper inducement or condition, free of coercion, and with an understanding of the charge and the consequences. The plea of guilty pursuant to *Alford versus North Carolina* was made after consultation with competent counsel, and there is a factual basis for the plea. So the Court does accept and enter the plea and conviction in this case.

Mr. Marshall does not contend he was not competent to enter his plea or otherwise challenge the district court's findings. Accordingly, because Mr. Marshall has not challenged the court's finding that he was competent to enter his plea, any alleged error in the failure to suspend proceedings for a competency evaluation is ultimately inconsequential.

[¶22] Affirmed.